UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB SCHEIBE, individually and on behalf of all those similarly situated,<br><br>                           Plaintiff,<br><br>v.<br><br>FIT FOODS DISTRIBUTION, INC. dba Mutant, a Canadian corporation,<br><br>                       Defendant. | Case No.: 23-CV-220 JLS (AHG)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 4) |

Presently before the Court is Defendant Fit Food Distribution, Inc.'s Motion to Dismiss Complaint ("Mot.," ECF No. 4). Plaintiff Jacob Scheibe filed an Opposition to the Motion ("Opp'n," ECF No. 6), and Defendant filed a Reply in support of the Motion ("Reply," ECF No. 7). In addition, Plaintiff filed two Notices of Supplemental Authority (ECF Nos. 9, 10).

The Court took Defendant's Motion under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). *See* ECF No. 8. Having considered Plaintiff's Complaint ("Compl.," ECF No. 1), the Parties' arguments, and the law—including the cases identified in Plaintiff's Notices of Supplemental Authority—the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion.

/ / /

# BACKGROUND

On or about August 16, 2022, Plaintiff purchased the blue raspberry flavor of Mutant GEAAR essential amino acid powder (the "Product")—a dietary supplement created and sold by Defendant—on Amazon.com for $28.00.  Compl. at 1; *id.* ¶ 18.  Plaintiff claims he carefully reviewed the Product's label to ensure the Product did not contain artificial flavors and ingredients.  *Id.* ¶¶ 19, 50.  The Product's front label displayed a crossed-out beaker and text that indicated that the Product contained no synthetic flavors.  *Id.* ¶ 21.  In addition, the Amazon.com listing for the Product stated "No Artificial Colours or Flavours."  *Id.*  The nutritional label on the back of the Product stated that it contained "malic acid."  *Id.* ¶ 23.

According to Plaintiff, testing by an independent third-party laboratory has confirmed that all flavors of the Product contain a certain type of malic acid called "DL malic acid."  *See id.* ¶¶ 23–24.  Plaintiff asserts that "[w]hile there is a naturally occurring form of malic acid," DL malic acid is a "synthetic substance derived from petrochemicals." *Id.* ¶ 24.  Consequently, Defendant's claims that the Product is devoid of synthetic and artificial flavors are misleading—at least, in Plaintiff's view.  *See id.* ¶ 30.  Plaintiff contends that he "would not have purchased the Product[] from Defendant if the truth about the Product[] was known, or would have only been willing to pay a substantially reduced price for the Product[] had [he] known that Defendant's representations were false and misleading."  *Id.* ¶¶ 49–54.

In addition to his allegations regarding Defendant's affirmative, misleading statements, Plaintiff argues that federal regulations and California law require (1) the Product's ingredient list to specify that it contains DL malic acid and (2) the Product's front and back labels to include disclosures clarifying that the Product is artificially flavored.  *Id.* ¶¶ 30–43.  According to Plaintiff, the Product complies with neither requirement.  *Id.*

Plaintiff filed the Complaint on February 6, 2023, asserting causes of action for (1) violation of California Business & Professions Code §§ 17200–17210 (California's Unfair Competition Law ("UCL"))—"'Unfair' Conduct"; (2) violation of the UCL—

"'Fraudulent' Conduct"; (3) violation of the UCL—"'Unlawful' Conduct"; (4) violation of California Business & Professions Code §§ 17500–17606 (California's False Advertising Law ("FAL")) (5) violation of California Civil Code §§ 1750–1784 (California's Consumer Legal Remedies Act ("CLRA")); (6) unjust enrichment; and (7) breach of express warranty. *Id.* at 14–21.

Plaintiff seeks to represent a class of all California-based consumers who purchased any flavor of the Product in the four years prior to the filing of the Complaint. *See id.* ¶ 55. Though Plaintiff purchased only the blue raspberry flavor, *id.* ¶ 18, Plaintiff refers to the Product generally throughout the Complaint, thereby alleging that all flavors of the Product share the alleged deficiencies that Plaintiff identifies. *See id.* at 1 (defining the Product without differentiating by flavor); *id.* ¶ 23 ("All flavors of the Product[] state, on the back label, that they contain 'malic acid.'").

Defendant filed the instant Motion on March 24, 2023, arguing the Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b). *See generally* Mot.

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction, and as such have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *See Demarest v. United States*, 718 F.2d 964, 965 (9th Cir. 1983). Because the issue of standing pertains to the subject-matter jurisdiction of a federal court, motions raising the issue of lack of standing are properly brought under Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The plaintiff bears the burden of establishing that he has standing to bring the claims asserted. *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996).

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke

federal jurisdiction." *Id.* A district court resolves a facial attack "as it would a motion to dismiss under Rule 12(b)(6)." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ("Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction.").

## II.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." A court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" do not demonstrate a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Review under Rule 8(a) requires a context-specific analysis involving a court's "judicial experience and common sense." *Id.* at 679. A court must "accept[] all factual

allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012). That said, the Court need not accept as true "legal conclusions" contained in the complaint. *Iqbal*, 556 U.S. at 678.

If a complaint does not state a plausible claim for relief, a court should grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading could . . . cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "The Ninth Circuit has instructed that the policy favoring amendments 'is to be applied with extreme liberality.'" *Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 155 (N.D. Cal. 2005) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

## III. Pleading Requirements for Fraud or Mistake—9(b)

A plaintiff who alleges fraud in their complaint must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Even if fraud is not an essential element of a plaintiff's claim, Rule 9(b)'s requirements nevertheless apply to allegations of a complaint that aver fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). A plaintiff avers fraud if they "specifically alleg[e] fraud, or . . . alleg[e] facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003)). An allegation or group of allegations necessarily constitute fraud if, when read together, they satisfy the elements of the applicable jurisdiction's substantive definition of fraud. *See Kearns*, 567 F.3d at 1126; *Vess*, 317 F.3d at 1105.

If a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim," a court must subject the claim as a whole to Rule 9(b)'s requirements. *Vess*, 317 F.3d at 1103–04. But where a plaintiff alleges both fraudulent and non-fraudulent conduct, "[a]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Id.* at 1104–05.

To satisfy Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).   A plaintiff's allegations must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)).   The complaint must include "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (internal quotation marks omitted) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)).   In other words, "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124 (internal quotation marks omitted) (quoting *Vess*, 317 F.3d at 1106).   Lastly, a plaintiff must explain what is false or misleading about the defendant's statements and why those statements are false. *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

## DISCUSSION

While Defendant raises a host of challenges to Plaintiff's Complaint, the arguments can be categorized into three groups: (1) Plaintiff's claims are preempted; (2) Plaintiff lacks standing to raise certain claims and to pursue injunctive relief; and (3) Plaintiff's Complaint fails to state a claim for some or all of the asserted causes of action.   The Court addresses each group of arguments in turn.

## I.    Preemption

The Nutritional Labeling and Education Act ("NLEA") "amended the Food, Drug, and Cosmetic Act ('FDCA') to 'establish[] uniform food labeling requirements.'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) (alteration in original) (quoting *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014)).   The NLEA "expressly preempts all state laws that 'directly or indirectly' establish 'any requirement for the labeling of food' not identical to federal requirements." *Morris v. Mott's LLP*, No.

SACV1801799AGADSX, 2019 WL 948750, at *2 (C.D. Cal. Feb. 26, 2019) (quoting 21 U.S.C. § 343-1(a)(3)).  In other words, "federal law provides the exclusive regulatory scheme for food product labeling."  *Sims v. Campbell Soup Co.*, No. EDCV18668PSGSPX, 2018 WL 7568640, at *7 (C.D. Cal. Sept. 24, 2018).  Consequently, "Plaintiff's claims are preempted to the extent that they allege that Defendant[] failed to disclose something on the [Product's] label that is not required to be disclosed under federal law."  *See id.*

The relevant federal regulations require that ingredients on a product's label be listed by their "common or usual name."  21 C.F.R. § 101.4(a).  Such regulations, however, also provide that the "name of an ingredient shall be a specific name and not a collective (generic) name."  21 C.F.R. § 101.4(b).

The Complaint alleges that "[t]he ingredients on the Product['s] label are declared in a way that is misleading and contrary to law, because Defendant designates the ingredient by its generic name, 'malic acid,' instead of its specific name, 'DL malic acid.'"  Compl. ¶ 30.  The Court will refer to this theory of liability as the "ingredient list theory."  Defendant contends that any claims based on the ingredient list theory are preempted because "malic acid" is the common and usual name for DL malic acid.  Def's Mem. Supp. Mot. Dismiss Compl. at 21, ECF No. 4-1 (the "Mem.").[1]  Plaintiff counters that there are two types of malic acid—naturally occurring malic acid and DL malic acid—and whether the Product's ingredient list should have included the more specific name "DL malic acid" or the more general name "malic acid" is a question of fact to be determined at a later stage of the litigation.  Opp'n at 12–13.  The Court agrees with Defendant.

The best reading of 21 C.F.R. § 101.4(b)'s requirement that a product's ingredient list contain an ingredient's "specific name and not . . . collective (generic) name" is not that it overrides 21 C.F.R. § 101.4(a)'s "common or usual name" requirement, but instead that it clarifies that ingredients must be listed separately rather than as a single generic

---

[1] All citations to the Memorandum refer to the blue page numbers stamped to the top of the document in CM/ECF.

category. *See* 21 C.F.R. § 101.4; *Sims*, 2018 WL 7568640, at *8. In other words, "apples, oranges, and grapes can't be listed collectively as 'fruit.' But, at the same time, sugar need not be listed by its scientific name, sucrose." *Morris*, 2019 WL 948750, at *5 (citation omitted). Accordingly, if "malic acid" is the common name for DL malic acid, then federal regulations would only require a product's ingredient list to list "malic acid," and Plaintiff's claims under the ingredient list theory of liability would be preempted. *Hilsley v. Gen. Mills, Inc.*, 376 F. Supp. 3d 1043, 1048 (S.D. Cal. 2019).

Food & Drug Administration ("FDA") regulations defining malic acid suggest that "malic acid" is the common name for both subtypes of malic acid:

> Malic acid (C4H6O5, CAS Reg. No. of L-form 97–67–6, CAS Reg. No. of DL-form 617–48–1) is the common name for 1–hydroxy–1, 2–ethanedicarboxylic acid. L (+) malic acid, referred to as L-malic acid, occurs naturally in various foods. Racemic DL-malic acid does not occur naturally. It is made commercially by hydration of fumaric acid or maleic acid.

21 C.F.R. § 184.1069(a). "[T]he regulation plainly states that 'malic acid' is the common name for the forms listed in parentheses, including [DL] malic acid . . . ." *Hilsley*, 376 F. Supp. 3d at 1049. Accordingly, federal regulations do not require that malic acid be listed by a more specific name on the Product's ingredient list, *see id*, and Plaintiff's ingredient list theory of liability is preempted.

The Court acknowledges that this finding is in tension with a previous ruling by this Court. In *Allred v. Frito-Lay N. Am., Inc.*, No. 17-CV-1345 JLS (BGS), 2018 WL 1185227, at *3 (S.D. Cal. Mar. 7, 2018), this Court concluded that "it is plausible that [DL ]malic and L-malic acid are specific names of the (collective, common) name malic acid." Since that decision, a clear majority of courts in this district, and throughout the nation, have concluded that malic acid is the common name for DL malic acid. *See Hilsley*, 376 F. Supp. 3d at 1049; *Morris*, 2019 WL 948750, at *5 ("[I]t's sufficient that Defendant listed 'malic acid,' which is the common or usual name for [DL] malic acid."); *Branca v. Bai Brands, LLC*, No. 318CV00757BENKSC, 2019 WL 1082562, at *6 (S.D.

Cal. Mar. 7, 2019) (same); *Gross v. Vilore Foods Co.*, No. 20CV0894 DMS (JLB), 2020 WL 6319131, at *3 (S.D. Cal. Oct. 28, 2020) (finding "more persuasive" the reasoning of a majority of courts that "malic acid" is the common name for DL malic acid); *Sims*, 2018 WL 7568640, at *8 ("[T]he Court is convinced that the common and usual name for the ingredient in V8 Splash is 'malic acid,' rather than the scientific name of '[DL] malic acid.'"); *Scheibe v. Performance Enhancing Supplements, LLC*, No. 3:23-CV-00219-H-DDL, 2023 WL 3829694, at *6 (S.D. Cal. June 5, 2023) ("[T]o the extent Plaintiff's claims are based on the assertion that the Products' labels should specifically list DL malic acid instead of malic acid, those claims are preempted."); *Willard v. Tropicana Mfg. Co.*, 577 F. Supp. 3d 814, 830 (N.D. Ill. 2021) (finding "that Plaintiffs' claims based on the theory of listing 'malic acid' instead of '[DL ]malic acid' on the ingredient list are preempted"). *But see Augustine v. Talking Rain Beverage Co.*, 386 F. Supp. 3d 1317, 1327 (S.D. Cal. 2019) ("At this stage of the proceedings, the Court cannot say that Plaintiffs' argument is preempted."); *Young v. Neurobrands, LLC*, No. C 18-05907 JSW, 2019 WL 13247942, at *5 (N.D. Cal. Feb. 19, 2019) ("Just as the court found in *Allred v. Frito-Lay*, the Court here cannot say at this procedural stage that the Plaintiffs' argument is preempted.").

Having newly reviewed the arguments on both sides of the issue, the Court is now persuaded by the majority reasoning. The Court is reassured in this conclusion by the classification of the FDA regulation defining "malic acid." 21 C.F.R. § 184.1069. That regulation appears in Title 21, Chapter 1, Subchapter B, Part 184, Subpart B of the Code of Federal Regulations. Subpart B is titled "Listing of *Specific* Substances Affirmed as [Generally Recognized as Safe]." 21 C.F.R. § 184.1005–184.1985 (emphasis added). Malic acid's inclusion in this list indicates that it is a "specific" substance that may be identified by its common name on a product's ingredient list.

In light of these conclusions, Plaintiff's claims are preempted to the extent they rely on the proposition that the Product's ingredient list was required to specify that the Product contained DL malic acid, as opposed to just malic acid.

/ / /

Plaintiff's Complaint, however, advances three theories of liability: the ingredient list theory just described, *see* Compl. ¶ 30; the theory that the Product violates California law because it lacks front- and back-label disclosures to inform consumers that the Product is artificially flavored (the "omission theory"), *see id.* ¶¶ 42–43; and the theory that the Product label's affirmative claim regarding the absence of synthetic flavors is false (the "misrepresentation theory"), s*ee id* ¶¶ 21–22.   Defendant does not contend that the omission or misrepresentation theories of liability are preempted, and most, if not all, courts to rule on this issue have found that such theories are not preempted.  *See, e.g.*, *Hilsley*, 376 F. Supp. 3d at 1048 ("[I]nsofar as Plaintiff's claims are based on failure to label the fruit snacks as artificially flavored, they are not preempted."); *Ivie v. Kraft Foods Glob., Inc.*, No. C-12-02554-RMW, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013) ("[T]he claims based on 'no artificial sweeteners or flavors' labels on the challenged drink mix are not preempted and survive the motion to dismiss.").

Thus, the Court proceeds to assess Plaintiff's claims based solely on Plaintiff's omission and misrepresentation theories of liability.

## II.   Standing

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  And "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (internal quotation marks omitted) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37 (1976)).

To demonstrate standing to sue, (1) "the plaintiff must have suffered an 'injury in fact' . . . which is (a) concrete and particularized and (b) 'actual or imminent'"; (2) the injury must be fairly traceable to the challenged action of the defendant; and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and footnote omitted) (first quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); and

then quoting *Simon*, 426 U.S. at 38, 43). "In a class action, standing is satisfied if at least one named plaintiff meets the requirements. The plaintiff class bears the burden of showing that the . . . standing requirements are met." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citation omitted). Furthermore, "[s]tanding must be shown with respect to each form of relief sought, whether it be injunctive relief, damages[sic] or civil penalties." *Id.* (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)).

### A.      Standing to Sue for Injunctive Relief

Defendant argues that Plaintiff lacks standing to seek injunctive relief because Plaintiff's Complaint does not allege that Plaintiff intends or desires to purchase Defendant's Product in the future. *See* Mem. at 12. Plaintiff counters that he has alleged an injury sufficient to seek injunctive relief because he is "unable to rely on Defendant's labelling in the future." Opp'n at 15.

In *Davidson v. Kimberly–Clark Corporation*, the Ninth Circuit held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling . . . because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." 889 F.3d 956, 969 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). For example, the threat of future harm could arise from the consumer's plausible allegations "that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or that "she might purchase the product in the future, . . . as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 970. The Ninth Circuit distinguished the contrary opinions of other circuits, stating that "[i]n none of th[ose] cases did the plaintiffs sufficiently allege their intention to repurchase the product at issue." *Id.* at 969 n.5. The Ninth Circuit then held that because the plaintiff had alleged that she "desire[d] to purchase" the defendant's product, she had sufficiently alleged an imminent or actual threat of future harm. *Id.* at 970.
/ / /

Since *Davidson*, many courts in the Ninth Circuit have held that "an explicitly stated intention or desire to purchase [a product] in the future is required to demonstrate concrete injury for standing to seek injunctive relief at the dismissal stage" with respect to claims brought under the UCL, FAL, or CLRA.  *Vitiosus v. Alani Nutrition, LLC*, No. 21-CV-2048-MMA (MDD), 2022 WL 2441303, at *7 (S.D. Cal. July 5, 2022); *see also, e.g.*, *Scheibe v. Livwell Prods., LLC*, No. 23-CV-216-MMA (BLM), 2023 WL 4414580, at *9 (S.D. Cal. July 7, 2023) (finding no standing to pursue injunctive relief where the plaintiff merely alleged that he may wish to purchase the defendant's products in the future); *Forrett v. Gourmet Nut, Inc.*, 634 F. Supp. 3d 761, 768 (N.D. Cal. 2022) (concluding that the plaintiff "ha[d] not specifically alleged a desire to purchase the Product in the future"); *Performance Enhancing Supplements*, 2023 WL 3829694, at *4 (similar).

Here, Plaintiff has failed to allege an actual and imminent threat of future injury giving rise to standing to pursue injunctive relief.  The Complaint is devoid of allegations showing that Plaintiff intends or desires to purchase the Product in the future.  *See generally* Compl.  And while the Complaint alleges that in the absence of an injunction, Defendant "will likely continue to advertise, market, promote, and sell its Product[] in an unlawful and misleading manner, . . . and members of the Class will continue to be misled, harmed, and denied their rights under law," *id.* ¶ 70, such allegations do not demonstrate that Plaintiff wishes to purchase more products from Defendant.

The Court therefore dismisses Plaintiff's claims for injunctive relief.

**B.    Claims for Products Not Purchased**

Defendant argues that Plaintiff lacks Article III standing to represent the claims of class members as to flavors of the Product that he did not purchase, Mem. at 13, noting that some Ninth Circuit courts "have concluded that absent economic injury, a plaintiff's claims for products she did not purchase must be dismissed for lack of standing," *Lorentzen v.*

/ / /

/ / /

/ / /

*Kroger Co.*, 532 F. Supp. 3d 901, 909 (C.D. Cal. 2021).[2]  Plaintiff counters that a majority of Ninth Circuit courts have held that "class action plaintiffs can bring claims for products they did not purchase 'as long as the products and alleged misrepresentations are substantially similar.'"  Opp'n at 7–8 (quoting *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCX), 2019 WL 1002513, at *2 (C.D. Cal. Jan. 30, 2019)).  Plaintiff also asserts that the Court should not assess "substantial similarity" until class certification. Opp'n at 9.

Conspicuously, neither Party cites *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015).  There, the Ninth Circuit held that a "disjuncture between the claims of named plaintiffs and those of absent class members" does not raise a standing issue, but rather an issue of a named plaintiff's ability to adequately represent the interests of the class.  *Id.* at 1261–62.  In other words, "[r]epresentative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."  *Id.* at 1262 (alteration in original) (internal quotation marks omitted) (quoting 7AA Charles Alan Wright et al., Federal Practice & Procedure § 1785.1 (3d ed.)).  Relying on *Melendres*, the Ninth Circuit has reversed a district court that concluded at the pleading stage that named plaintiffs lack standing to assert claims on behalf of putative class members for products that the named plaintiffs did not purchase.  *Nunez v. Saks Inc.*, 771 F. App'x 401, 402 (9th Cir. 2019).

Here, Plaintiff only purchased the blue raspberry flavor of the Product.  Compl. ¶ 18. There is no dispute that Plaintiff has standing to assert claims based on this purchase.  *See*

---

[2] Defendant also argues that Plaintiff, to the extent he is suing as an individual, cannot bring claims regarding flavors of the Product that he did not purchase.  Reply at 7.  But it is not clear from Plaintiff's Complaint that Plaintiff asserts any claims regarding other flavors of the Product outside of his status as a potential class representative. *See generally* Compl.  Indeed, Plaintiff argues only that he can serve as a representative for the claims of consumers who purchased other flavors. *See* Opp'n at 7–9.  The Court therefore sees no need to address this version of Defendant's argument.

*generally* Mem.  But Plaintiff also seeks to represent the claims of consumers who purchased any flavor of the Mutant GEAAR powder. *See* Compl. at 1; *id.* ¶ 23; *id.* ¶ 55.[3] Accordingly, there is a "disjuncture between the claims of [Plaintiff] and those of absent class members."  *See Melendres*, 784 F.3d at 1261.  Following *Melendres*, the Court finds that this disjuncture is not grounds for dismissing Plaintiff's claims at the pleading stage for lack of standing.  Whether Plaintiff may represent claims by other consumers based on the labeling for other flavors of the Mutant GEAAR powder is a question to be resolved at the class certification stage of the litigation.  *See Stotz v. Mophie Inc.*, No. CV 16-8898-GW (FFMX), 2017 WL 1106104, at *5–6 (C.D. Cal. Feb. 27, 2017).

## III.   Sufficiency of the Pleadings

Defendant first argues that Plaintiff has not adequately pleaded that he is entitled to equitable relief with respect to any of his claims.  Mem. at 14–16.  Defendant then argues that Plaintiff must, and has not, pleaded actual reliance with sufficient particularity under Rule 9(b) to sustain his UCL, FAL, and CLRA claims.  *Id.* at 16–18.  Lastly, Defendant asserts that Plaintiff has not pleaded enough factual content to support the conclusion that Defendant's Product contains artificial malic acid.  *Id.* at 18–20.  The Court addresses each argument in turn.

### A.   *Equitable Relief*

Defendant argues that the Court must dismiss Plaintiff's claims for equitable relief because Plaintiff has not pleaded that he lacks an adequate remedy at law.  Mem. at 14–16.  Defendant relies on *Sonner v. Premier Nutrition Corp.*, in which the Ninth Circuit held that "traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action."  971 F.3d 834, 844 (9th Cir. 2020).  Based on *Sonner*, Defendant asks the Court to dismiss Plaintiff's unjust enrichment claim, Plaintiff's

---

[3] Defendant argues that the Complaint "does not even *identify*" all products at stake.  Mem. at 14 n.2.  The Complaint, however, makes it sufficiently clear that the claims of Plaintiff and the putative class relate only to the different flavors of GEAAR essential amino acid powder.  *See* Compl. at 1; *id.* ¶ 23.

14

UCL and FAL claims, and Plaintiff's claim for equitable relief under the CLRA.  Mem. at 16.

Plaintiff concedes that "a plaintiff may seek equitable relief (such as restitution or disgorgement under an unjust enrichment theory) only if [they] lack[] an adequate legal remedy."  Opp'n at 13 (citing *Sonner*, 971 F.3d at 845).  But Plaintiff points out that Federal Rule of Civil Procedure 8(a)(3) allows alternative pleading.  *Id.*  So, Plaintiff argues, the Court should permit him to plead equitable claims as a fail-safe in case discovery reveals his legal remedies are inadequate.  *Id.*  Plaintiff implies that the Court should not dismiss his equitable claims[4] unless the Court can "say with certainty" that he has an adequate legal remedy.  *Id.* at 15.

Plaintiff is correct that he may plead a claim for damages without sacrificing his ability to plead a claim for equitable relief.  Rule 8(a)(3) explicitly countenances seeking relief in the alternative, and Rule 8(d)(3) allows a party to state "as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P 8(a)(3); *id.* 8(d)(3).  To read *Sonner* to preclude Plaintiff from pleading an equitable remedy in the alternative would therefore put it in conflict with the plain language of Rule 8.  Fortunately, *Sonner*'s language does not compel this result.  *See Cepelak v. HP Inc.*, No. 20-CV-02450-VC, 2021 WL 5298022, at *2 (N.D. Cal. Nov. 15, 2021) ("[N]othing in *Sonner* precludes plaintiffs from [pleading a claim for equitable relief] in the alternative to remedies at law.").

That said, Plaintiff must still adequately plead his alternative, equitable claims.  The *Sonner* court affirmed the dismissal of a plaintiff's equitable claims in part because "the operative complaint [did] not allege that *Sonner* lack[ed] an adequate legal remedy."  971 F.3d at 844.  *Sonner* therefore unambiguously requires Plaintiff, for each equitable claim he asserts, to "plead the 'basic requisites of the issuance of equitable relief'" under federal law—including that he "lacks an adequate legal remedy"—to survive a motion to dismiss.

---

[4] Because the Court has already dismissed Plaintiff's claims for injunctive relief for lack of standing, *see supra* Part II.A, the Court does not reach the question of whether *Sonner*'s holding applies to claims for injunctive relief, *see Sonner*, 971 F.3d at 842 ("Injunctive relief is not at issue . . . .").

23-CV-220 JLS (AHG)

*See id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)).  Put another way, the fact that Plaintiff pleads an equitable claim in the alternative does not relieve him of his burden to show that he is entitled to relief.  *See* Fed. R. Civ. P. 8(a); *see also Cepelak*, 2021 WL 5298022, at *2 ("The relevant inquiry is not what other claims the plaintiffs have raised, but whether they have plausibly alleged the inadequacy of legal remedies for each claim for equitable relief that they seek.").

Plaintiff does not contest Defendant's assertion that Plaintiff has not pleaded that his legal remedies are inadequate with respect to his claims for equitable monetary relief.  *See* Opp'n at 13–15.  Nor does Plaintiff attempt to explain how equitable monetary relief would redress an injury that damages could not.  *See* Compl.; Opp'n; *see also Cepelak*, 2021 WL 5298022, at *3 (concluding that plaintiffs had not alleged an inadequate remedy at law because "[a]ll of the plaintiffs' claims for [equitable monetary] relief [were] 'rooted in the same theory and factual allegations' as their claims for damages" (quoting *Elgindy v. AGA Serv. Co.*, No. 20-CV-06304-JST, 2021 WL 1176535, at *15 (N.D. Cal. Mar. 29, 2021))).  Therefore, Plaintiff has failed to adequately plead a claim for equitable monetary relief under *Sonner*.

Plaintiff appears to concede that his FAL and UCL claims, his standalone claim for unjust enrichment, and his claims for disgorgement and restitution under the CLRA are equitable in nature.  *See* Opp'n at 13 (categorizing the foregoing claims as "claims for equitable relief").  Given Plaintiff's apparent concession, the Court does not reach the question as to whether Plaintiff can seek a form of restitution at law under any of the Counts of his Complaint.  *See Sonner*, 971 F.3d at 830 n.2 ("Sonner does not dispute that the restitution she seeks under the UCL and CLRA is restitution in equity, not restitution at law."); *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) ("[W]hether [restitution] is legal or equitable depends on 'the basis for [the plaintiff's] claim' and the nature of the underlying remedies sought." (alteration in original) (quoting *Reich v. Cont'l Cas. Co.*, 33 F.3d 754, 756 (7th Cir. 1994) (Posner, J.))).  The Court instead dismisses all claims for restitution and disgorgement.

As the Court has now dismissed all of Plaintiff's claims for both injunctive and equitable monetary relief, it must also dismiss entirely three of Plaintiff's causes of action. First, because non-government plaintiffs may only seek an injunction or restitution under the UCL and FAL, *In re Vioxx Class Cases*, 103 Cal. Rptr. 3d 83, 96 (Ct. App. 2009), the Court dismisses Plaintiff's UCL and FAL causes of action.   Second, because Plaintiff characterizes his unjust enrichment claim as a claim in quasi-contract for *equitable* restitution and disgorgement, *see* Opp'n at 13, the Court also dismisses Plaintiff's unjust enrichment claim.[5]

### B.   Rule 9(b) and Rule 8(a)

#### 1.   Application of Rule 9(b)

Defendant argues that because Plaintiff's UCL, FAL, and CLRA claims sound in fraud, Plaintiff's Complaint must satisfy Rule 9(b)'s particularity requirements with respect to those claims.   Mem. at 16–17.   Plaintiff does not dispute Defendant's contention. *See* Opp'n at 5–7.    Instead, Plaintiff responds that he has satisfied Rule 9(b)'s requirements.   *Id.*

The Parties do not address why Plaintiff's UCL, FAL, and CLRA claims sound in fraud but instead proceed directly to the Rule 9(b) analysis.   The Parties' omission in this regard is curious, as Rule 9(b) does not always apply to UCL, FAL, and CLRA claims. *See, e.g.*, *Kearns*, 567 F.3d at 1126 (determining whether Rule 9(b) applied to UCL and CLRA claims by asking whether the plaintiff alleged the elements of fraud under California law, including intent to induce reliance); *id.* at 1125 ("[F]raud is not a necessary element of a claim under the CLRA and UCL[] . . . ."); *Vess*, 317 F.3d at 1105–06 (declining to apply Rule 9(b)'s particularity requirement to the plaintiff's claim that one of the defendants *negligently* failed to disclose a financial relationship); FAL § 17500 (outlawing

---

[5] The Court does not reach the Parties' arguments regarding whether the Court should construe Plaintiff's unjust enrichment claim as a claim in quasi-contract seeking restitution, as (1) the claim as presented is subject to dismissal for Plaintiff's failure to allege irreparable harm and (2) neither Party has addressed in detail the elements Plaintiff must allege to survive a motion to dismiss on such a claim.

advertising that is "known, *or which by the exercise of reasonable care should be known*, to be untrue or misleading" (emphasis added)).

Plaintiff's Complaint appears to contain allegations of both fraudulent and nonfraudulent conduct. *Compare* Compl. ¶ 29 ("Defendant uses the petrochemical-derived DL malic acid in its Product[] to create a sweet and tart flavor *but pretends otherwise . . . .*" (emphasis added)), *with id.* ¶ 79 (suggesting Defendant "knew or in the *exercise of reasonable care* should have known" that its statements were untrue or misleading (emphasis added)). But as the Parties do not raise the issue of whether Rule 9(b) applies, the Court declines to decide that issue here. Instead, the Court will proceed under the assumption that Rule 9(b) governs Plaintiff's claims. *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 n.11 (9th Cir. 2020) (noting that a Rule 9(b) analysis "may not even be necessary" but proceeding under the assumption that Rule 9(b) applies because the plaintiffs "did not raise this argument in their briefing").

### 2. *The Circumstances of the Alleged Fraud*

To survive Rule 9(b) scrutiny in the Ninth Circuit, a plaintiff must plead the "who, what, when, where, and how" of the defendant's alleged misconduct. *Kearns*, 567 F.3d at 1124 (quoting *Vess*, 317 F.3d at 1106). Here, Plaintiff accuses only one alleged wrongdoer—Defendant (the "who"). Compl. ¶ 20. Plaintiff alleges that Defendant misrepresented the natural origin of a specified flavoring ingredient—malic acid—in all flavors of one Product (the "what"). *Id.* at 1; *id.* ¶¶ 20, 22–25. Plaintiff provides his approximate purchase date, states that Plaintiff reviewed the natural flavoring claims on Defendant's Product "prior to his purchase," and clarifies the relevant class period in which other class members were allegedly exposed to Defendant's misrepresentations (the "when"). *Id.* ¶¶ 18, 50, 55. And Plaintiff alleges that he purchased the Product from Amazon.com while residing in California and seeks to represent only California-resident class members (the "where"). *Id.*

This leaves the "why" and the "how." Plaintiff identifies the exact statements and omissions that he alleges are misleading: the statement on the front label of all flavors of

the Product claiming that the Product contains no synthetic flavors, the statement on the Product's Amazon.com listing that the Product contains no artificial flavors, and the omission of front- and back-label disclosures that would have clarified that the Product contains artificial flavors. *Id.* ¶¶ 21, 42–43. Plaintiff then explains *why* these statements and omissions are misleading and/or false—because the products allegedly contain a synthetic version of malic acid. *Id.* ¶ 22. Lastly, Plaintiff alleges *how* Defendant's statements and omissions allegedly harmed him—he claims that he was exposed to the alleged statements, relied on them, and "would not have purchased the Products from Defendant if the truth about the Products was known, or would have only been willing to pay a substantially reduced price." *Id.* ¶¶ 19, 21, 51. By identifying specific misleading statements and omissions, explaining why they are misleading, and alleging how he was harmed by them, Plaintiff adequately alleges the "how" and "why" of the alleged misconduct. *See Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1133–34 (S.D. Cal. 2021).

Based on the above analysis, the Court is convinced that Plaintiff has complied with Rule 9(b).[6] Defendant, however, has advanced additional arguments as to why Plaintiff's allegations do not satisfy Rule 9(b) and/or Rule 8(a). The Court will address each in turn.

### 3. Actual Reliance

Defendant argues that Plaintiff has failed to plead enough detail regarding his actual reliance on Defendant's alleged misstatements. *See* Mem. at 16–17. Defendant's argument, however, is in tension with binding Ninth Circuit precedent. In *Moore*—which involved claims under the UCL, FAL, and CLRA—the Ninth Circuit reversed a district court's decision to "fault[] [p]laintiffs for not providing more detail as to how each [p]laintiff relied on the 'prescription' label or requirement to purchase the food." 966 F.3d / / /

---

[6] Because the Court has determined that Plaintiff's ingredient list theory of liability is preempted, the Court does not assess whether Plaintiff pleaded that theory of liability in compliance with Rule 9(b)'s requirements.

at 1020.  The Ninth Circuit then determined that the plaintiffs, despite the lack of "detail in their individual allegations," had adequately pleaded actual reliance.  *Id.*

Though Plaintiff must identify the statements on which he relied, allege when he was exposed to them, and allege that he relied on them, *see Kearns*, 567 F.3d at 1126, *Moore* demonstrates that Plaintiff is not required to provide extensive detail regarding his alleged reliance to survive Rule 9(b).  Indeed, after *Moore*, courts—applying Rule 9(b)— have found that plaintiffs have adequately pleaded actual reliance via similar allegations to those in the instant Complaint.  *See, e.g.*, *Stewart*, 537 F. Supp. 3d at 1132–37 (finding that the plaintiffs had adequately pleaded actual reliance by pleading that they were exposed to statements that were prominently displayed on the package of the products they purchased); *Scheibe v. Performance Enhancing Supplements, LLC*, No. 3:23-CV-00219-H-DDL, 2023 WL 5444644, at *3–4 (S.D. Cal. Aug. 23, 2023).

Having clarified the level of detail that Plaintiff must provide regarding his reliance, the Court now turns to whether Plaintiff has adequately pleaded actual reliance.  To plead actual reliance (i.e., statutory standing) under the UCL or FAL in a case involving false advertising, a plaintiff must "show that the misrepresentation was an immediate cause of the injury-producing conduct" but need not allege that "[the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct."  *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 888 (Cal. 2011) (alteration in original) (internal quotation marks omitted) (quoting *In re Tobacco II Cases*, 207 P.3d 20, 39–40 (Cal. 2009)).

Moreover, "any plaintiff who has [statutory] standing under the UCL[] and FAL[] . . . will, *a fortiori*, have suffered 'any damage' for purposes of establishing CLRA [statutory] standing."  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013).  In other words, if a plaintiff adequately pleads actual reliance under the UCL and FAL, they will have satisfied the CLRA's related element.

Defendant argues that Plaintiff's Complaint "is devoid of any specific factual allegations that he looked for any specific information on Fit Foods' Product labels before making his purchase, or that he actually based his purchased[sic] decision on the presence

or absence of any such information." Mem. at 17.  The Court disagrees.  Rule 9(b) does not supplant the requirement that the Court "[a]ssum[e] the truth of [Plaintiff's] allegations and construe[] them . . . in the light most favorable to [Plaintiff]."  *Davidson*, 889 F.3d at 964.[7]  Under this review, Defendant's critiques do not hold water.

First, Plaintiff has adequately alleged his exposure to Defendant's alleged misrepresentations and omissions.  Plaintiff asserts that he reviewed "the natural flavoring claims being made [on the Product's label]" and did so "prior to his purchase." Compl. ¶ 50.  Accepting this allegation as true, the Court can reach no other conclusion but that Defendant's alleged affirmative misrepresentation was on the Product's label at the time Plaintiff made his purchase.[8]  Similarly, Plaintiff alleges that he reviewed a no-synthetic-flavors claim on the Product's Amazon.com storefront, and that Defendant's Product lacks statutorily required, front- and back-label disclosures regarding the use of artificial flavors.  *Id.* ¶¶ 21, 41–43.  Plaintiff has thus (1) adequately alleged that he read the Product's label and Amazon listing prior to his purchase and (2) adequately described the condition of the Product's label and Amazon listing at the time he read it.

Second, Plaintiff has adequately alleged the immediate causal role that Defendant's alleged misstatements and omissions played in his decision to purchase Defendant's product.  In *Moore*, the plaintiffs made a sufficient showing to survive a motion to dismiss by pleading that as a result of an allegedly fraudulent pet-food label, they either paid more for pet food than they would have paid in the absence of the fraud or would never have purchased the type of pet food at issue.  966 F.3d at 1020.  Here as well, Plaintiff alleges that he either "would not have purchased the Product[] from Defendant if the truth about

---

[7] To the extent that Defendant implies that Rule 9(b) requires Plaintiff to meet a higher plausibility standard, *see* Mem. at 20, Defendant's argument is inconsistent with Ninth Circuit precedent.  *See Cafasso*, 637 F.3d at 1055 ("*Iqbal*'s plausibility requirement applies to claims subject to Rule 9(b).").

[8] Defendant in its Reply argues that "the natural flavoring claims" is vague, Reply at 2, but the Court is unconvinced.  Reading the Complaint as a whole, it is clear that "the natural flavoring claims" refers to the specifically identified statement on the Product's label that indicates that the Product contains no synthetic flavors.  *See* Compl ¶ 21.

the Product[] [was apparent], or would have only been willing to pay a substantially reduced price for the Product[]."  Compl. ¶ 51.  Plaintiff then further alleges that he "carefully reviews labels, including the Product['s] label[], to ensure that he consumes only natural ingredients and avoids artificial flavors and ingredients." *Id.* ¶ 19.  Lastly, Plaintiff alleges that he understood the statement on the Product's label ("No Synthetic Flavors," *id.* ¶ 21)—and the Product's failure to disclose the presence of artificial flavors—to mean that the Product contained only natural flavors. *Id.* ¶ 50.  Together, these allegations are sufficient to survive a motion to dismiss.

Lastly, even if Plaintiff had not adequately alleged his actual reliance, Plaintiff's allegations are sufficient to invoke the presumption of reliance that arises at the pleading stage under California law. *See Moore*, 966 F.3d at 1021 ("[A]t the motion to dismiss stage, 'actual reliance . . . is inferred from the misrepresentation of a material fact.'" (second alteration in original) (quoting *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1055 (9th Cir. 2017))).  To allege reliance, therefore, a plaintiff "only need[] establish it to be plausible that a 'reasonable man would attach importance to [the] existence or nonexistence [of the misrepresentation] in determining his choice of action in the transaction in question.'"  *Id.* (alterations in original) (internal quotation marks omitted) (quoting *Friedman*, 855 F.3d at 1056).

Here, Plaintiff alleges that sixty to seventy percent of consumers reported on a consumer survey that they would pay a premium for clean label foods, which include foods labeled as containing no artificial ingredients.  Compl. ¶ 16.  Given this allegation, it "certainly seems plausible that a reasonable consumer would at least partially rely" on a no-synthetic-flavors label to pay more money for a certain supplement over others.  *See Moore*, 966 F.3d at 1021.  The Court therefore declines to dismiss any of Plaintiff's claims on the grounds that Plaintiff has failed to adequately plead actual reliance.

### 4.  *Presence of Malic Acid in Defendant's Product*

Defendant also asserts that Plaintiff has failed to "allege facts establishing plausibly or with particularity that the product he purchased contained DL malic acid."  Mem. at 18

1  (capitalization altered).   Specifically, Defendant argues that Plaintiff has insufficiently
2  described the laboratory testing that allegedly revealed the presence of DL malic acid in
3  the Product.  *Id.* at 18–19.

4        a.     Plaintiff's Laboratory-Testing Allegation

5       Plaintiff alleges that "testing by an independent third-party laboratory has confirmed
6  that the malic acid that Defendant uses in [the Product] is DL malic acid, a synthetic
7  substance derived from petrochemicals."   Compl. ¶ 24.   Defendant argues that this
8  allegation is "vague and conclusory" and therefore that the Court should not accept it for
9  its truth.  Mem. at 19.

10       True, this Court need not assume the truth of conclusory allegations.  *See Iqbal*, 556
11  U.S. at 681.   But in *Twombly* and *Iqbal*, the Supreme Court identified conclusory
12  allegations as those that "amount to nothing more than a 'formulaic recitation of the
13  elements'" that the plaintiff must prove to prevail.  *Id.* (quoting *Twombly*, 550 U.S. at 555).
14  For example, the bare allegation that two defendants "agreed" not to compete is conclusory
15  in an antitrust case—it states merely the existence of an element of the plaintiff's antitrust
16  cause of action.  *See Twombly*, 550 U.S. at 556–57, 564 & n.9.  By contrast, allegations in
17  an antitrust case "identifying a written agreement or even a basis for inferring a tacit
18  agreement" qualify not as conclusory, but instead as valid "factual enhancement" that a
19  court must assume is true.  *See id.* at 557 (internal quotation marks omitted) (quoting *DM*
20  *Rsch., Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)).

21       Because Plaintiff's allegation regarding laboratory testing amounts to more than a
22  formulaic recitation of an element of his claim, the Court must accept it for its truth.
23  Plaintiff does not solely allege that the Product contains an artificial flavor.  Instead, he
24  alleges that an independent, third-party laboratory tested Defendant's Product and
25  confirmed that it contains a version of malic acid—DL malic acid—that is derived from
26  petrochemicals.  Compl. ¶ 24.  This allegation is more akin to an allegation providing
27  factual enhancement than it is to the examples of conclusory allegations offered in
28  *Twombly* and *Iqbal*.

Several courts have reached the same conclusion. *See, e.g.*, *Livwell Prods.*, 2023 WL 4414580, at *4 (assuming the truth of the plaintiff's allegation that laboratory testing confirmed the presence of malic acid in the defendant's products); *Scheibe v. Lifeaid Beverage LLC*, No. 23-CV-840-MMA-DEB, 2023 WL 6131082, at *4 (S.D. Cal. Sept. 19, 2023) (finding sufficient the allegation that testing by an independent third-party laboratory confirmed the presence of DL malic acid); *Augustine*, 386 F. Supp. 3d at 1325–26 (crediting the plaintiff's allegation that "testing has confirmed" the presence of DL malic acid in the defendant's products); *Gouwens v. Target Corp.*, No. 3:22-CV-50016, 2022 WL 18027524, at *2 (N.D. Ill. Dec. 30, 2022) (rejecting the defendant's argument that the plaintiff must describe the testing methodology of her alleged laboratory analysis to plausibly plead that the defendant's product contains DL malic acid); *McCall v. Publix Super Markets, Inc.*, No. 8:22-CV-584-MSS-CPT, 2023 WL 2362542, at *4 (M.D. Fla. Feb. 28, 2023) (same); *Allred v. Kellogg Co.*, No. 17-CV-1354-AJB-BLM, 2018 WL 1158885, at *2 (S.D. Cal. Feb. 23, 2018) (determining that the plaintiff had plausibly alleged the presence of artificial malic acid in the defendant's products even when the plaintiff had not alleged laboratory testing); *Branca*, 2019 WL 1082562, at *3 (same).

The cases cited by Defendant do not persuade the Court to alter its conclusion. Defendant relies on a line of cases from the Southern District of New York in which district courts refused to assume the truth of alleged laboratory analyses absent further detail about "the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, [or] the qualifications of the testers." *Myers v. Wakefern Food Corp.*, No. 20 CIV. 8470 (NSR), 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022); *see also, e.g.*, *Hoffman v. Kraft Heinz Foods Co.*, No. 22-CV-397 (KMK), 2023 WL 1824795, at *7–8 (S.D.N.Y. Feb. 7, 2023). Defendant argues that it needs these additional details about the alleged laboratory testing to contest Plaintiff's allegation regarding the presence of DL Malic Acid in its Product. Reply at 5.

But trial or summary judgment, not a motion to dismiss, are the proper vehicles to contest the veracity of Plaintiff's factual allegations or criticize the quality of Plaintiff's

evidence.  *See Koller v. Med Foods, Inc.*, No. 14-CV-02400-RS, 2015 WL 13653887, at *3 (N.D. Cal. Jan. 6, 2015) ("[A]djudicating what [studies described in the complaint] do or do not *prove* is beyond the appropriate scope of inquiry at the pleading stage."); *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018) (stating, in a case involving Rule 9(b), that "plaintiffs are generally not expected to provide evidence in support of their claims at the pleading stage").  For a court to credit his allegation for its truth, it is enough that Plaintiff allege that laboratory testing occurred and describe the results of that testing.[9]

Lastly, the Court notes that Defendant is not left without a remedy should discovery reveal that no laboratory testing occurred.  In that instance, Defendant's "remedy would lie in Rule 11."  *Kellogg Co.*, 2018 WL 1158885, at *1; *see also Koller*, 2015 WL 13653887, at *3 ("[T]he testing . . . referenced in the complaint[] may bear on the reasonableness of counsel's pre-suit investigation . . . .").

The Court therefore assumes the truth of Plaintiff's allegation regarding independent laboratory testing for purposes of deciding Defendant's Motion.

> b.    The Specific Unit Purchased by Plaintiff

Defendant correctly notes that Plaintiff must adequately plead that the specific unit he purchased contains DL malic acid.  *See Davidson*, 889 F.3d at 965.  Plaintiff need not plead, however, that he or his counsel—rather than a third party—conducted laboratory testing; nor does Plaintiff need to plead that a laboratory tested the specific unit he purchased.  *See Pels v. Keurig Dr. Pepper, Inc.*, No. 19-CV-03052-SI, 2019 WL 5813422,

---

[9] Defendant's argument (made without citation to precedent) that Rule 9(b) requires more detail about the alleged laboratory testing fails for similar reasons.  Defendant cannot reasonably contend that Plaintiff's complaint fails to provide adequate notice of Defendant's alleged misconduct absent more detail about testing methodology.  *See United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (describing the policy goals of Rule 9(b)).  Further, though Rule 9(b) requires "some factual basis" for a plaintiff's claims to "protect[] against false or unsubstantiated charges," it does not require Plaintiff to prove his case at the pleading stage.  *See id.*  Indeed, courts in the Ninth Circuit have—in cases where Rule 9(b) applies—allowed malic-acid lawsuits to go forward without requiring plaintiffs to provide more detail about laboratory testing.  *See, e.g.*, *Lifeaid Beverage*, 2023 WL 6131082, at *4; *Livwell Prods.*, 2023 WL 4414580, at *4.  *But see Performance Enhancing Supplements*, 2023 WL 3829694, at *3–4.

at *4–5 (N.D. Cal. Nov. 7, 2019) (rejecting the argument that a plaintiff must allege that he himself tested the product he purchased and concluding that a plaintiff could, at least in some cases, rely on testing by third parties of other samples of the same product).  So long as Plaintiff has adequately alleged that all units of the Product contain DL Malic acid, Plaintiff need not demonstrate that he himself conducted laboratory testing or that a laboratory tested the specific unit he allegedly purchased.

c.      Plausibility of Plaintiff's Artificial Malic Acid Allegations

The Court finally turns to whether Plaintiff has plausibly alleged that all flavors of the Product contain artificial malic acid.  Plaintiff alleges that all flavors of Defendant's Product state on the back label that they contain malic acid.  Compl. ¶ 23.  Plaintiff next alleges that there are two forms of malic acid: one naturally occurring form and one synthetic form—DL malic acid.  *Id.* ¶ 24.  Plaintiff clarifies that DL malic acid is synthetic because it is "manufactured in petrochemical plants from benzene and butane."  *Id.* ¶ 25. Lastly, Plaintiff offers two allegations supporting the inference that all flavors of the Product contain DL malic acid.  First, Plaintiff alleges that because naturally occurring malic acid is extremely expensive to formulate in large quantities, companies almost never use naturally occurring malic acid in mass-produced food products.  *Id.* ¶ 24.  Second, Plaintiff alleges that laboratory testing "has confirmed that the malic acid Defendant uses in [the Product] is DL malic acid."  *Id.*

Read together, and taken as true, these factual allegations give rise to the reasonable inference that all flavors of Defendant's Product—including the flavor purchased by Plaintiff—contain artificial DL malic acid.  Though Defendant reads Paragraph 24 as ambiguous as to what products the alleged laboratory tested, *see* Mem. at 18, the Court does not see how a laboratory could confirm the presence of DL malic acid in Defendant's Product without testing Defendant's Product.  And even if the Court were to read Plaintiff's allegation skeptically and assume that only some flavors of the Product were tested, the Court does not find it plausible that a company would use DL malic acid in some flavors/units of a product but use naturally occurring malic acid in other flavors/units of

that same product.  The Court is satisfied, therefore that Plaintiff has adequately pleaded that Defendant's Product contains DL malic acid.

The cases Defendant cites—*Pels* and *Vavak v. Abbott Lab'ys, Inc.*, No. SACV101995JVSRZX, 2011 WL 13130493 (C.D. Cal. Mar. 7, 2011)—are distinguishable.  In both cases, the district courts dismissed the plaintiffs' complaints for failure to allege that the product the plaintiffs purchased contained an alleged defect.  *See Pels*, 2019 WL 5813422, at *4–5 (dismissing the plaintiff's claim for failure to plead that the water he purchased was defective (i.e., contained an illegal level of arsenic)); *Vavak*, 2011 WL 13130493, at *2 (dismissing the plaintiff's claim for failure to plead that the baby formula she purchased was defective (i.e., contained beetles or beetle larvae)).  These cases stand for the uncontroversial proposition that it is not reasonable to infer that because certain shipments of a product contained an unintended defect, all units of that product contained said defect.  They say nothing, however, about whether it is reasonable to infer that where the labels of all flavors of a product state that the product contains an ingredient—and where laboratory testing reveals that some units of the product contain an artificial version of that ingredient—a company used the same version of the ingredient across all flavors of the product.

The Court therefore declines to dismiss any of Plaintiff's claims on the grounds that Plaintiff inadequately pleaded that DL malic acid is present in Defendant's Product.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss Complaint (ECF No. 4).  The Court **DISMISSES** all claims to the extent they are premised on the ingredient list theory.  The Court further **DISMISSES** all claims for injunctive relief for lack of standing and all claims for equitable monetary relief for failure to plead the inadequacy of legal remedies.  As a result, the Court **DISMISSES** Plaintiff's UCL, FAL, and unjust enrichment claims in their entirety.  The Court **DENIES** the remainder of Defendant's Motion.

/ / /

The Court **GRANTS** Plaintiff **LEAVE TO AMEND** with respect to all claims to the extent that Plaintiff can cure the above-noted deficiencies.  To that end, Plaintiff **MAY FILE** an amended complaint within <u>twenty-one (21) days</u> of the electronic filing date of this Order.  If Plaintiff files an amended complaint, Defendant must respond within the time prescribed by Federal Rule of Civil Procedure 15.  If Plaintiff does not file an amended complaint within the time prescribed herein, the case will proceed on Plaintiff's surviving claims, and Defendant's answer will be due <u>fourteen (14) days</u> after the expiration of Plaintiff's deadline to file an amended complaint.

**IT IS SO ORDERED.**

Dated:  November 8, 2023

Hon. Janis L. Sammartino
United States District Judge